**LIBRA BANK LIMITED, Libra International Bank S.A., Banco De La Provincia De Buenos Aires, Banco Espirito Santo e Comercial De Lisboa, Banco De Vizcaya S.A., Banque International a Luxembourg, S.A., Banque Rothschild, and the National Bank of Washington, Plaintiffs-Appellants,**

**v.**

**BANCO NACIONAL de COSTA RICA, S.A., Defendant-Appellee.**

**No. 812, Docket 81–7946.**

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1982.

Decided April 12, 1982.

Jerry Strochlic, New York City (Sage, Gray, Todd & Sims, New York City, on the brief), for plaintiffs-appellants.

Jeffrey Barist, New York City (Patti R. Page, and White & Case, New York City, on the brief), for appellee.

Before TIMBERS, NEWMAN and WINTER, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from an order entered in the Southern District of New York, Constance Baker Motley, *District Judge*, granting defendant's motion to vacate a prejudgment attachment of its property pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602–1611 (1976) ("the Act"). The essential issue is whether defendant "explicitly" waived its immunity from prejudgment attachment within the meaning of § 1610(d)(1) of the Act, 28 U.S.C. § 1610(d)(1).[1] The district court held that it did not. We hold that it did. Accordingly, we reverse and vacate the order of the district court.

## I.

The instant action arises out of the making of a $40 million loan to defendant Banco Nacional de Costa Rica ("Banco Nacional") by sixteen banks, including plaintiffs herein. The complaint alleges that Banco Nacional defaulted in the payment of the loan and on the promissory notes evidencing the loan.

In September 1981, plaintiffs obtained in the New York County Supreme Court an order to show cause requiring Banco Nacional to show cause why an order should not be granted attaching its property in New York State. Banco Nacional defaulted on the return day of the order to show cause. An order of attachment was entered on default in November 1981.

After the sheriff had levied upon the property of Banco Nacional held by several banks in New York City, Banco Nacional decided to defend the action. On December 1, 1981, it appeared and demanded a copy of the complaint. On December 8, it removed the action to the District Court for the Southern District of New York. At the same time it moved to dismiss the action for lack of in personam jurisdiction and to vacate the order of attachment.

Plaintiffs moved in the district court to remand the case to the state court on the ground that the district court lacked subject matter jurisdiction. Plaintiffs also sought a stay of consideration of defendant's motions to dismiss the action and to vacate the attachment. In an opinion dated December 18, 1981, the district court denied plaintiffs' motion to remand and scheduled a hearing on defendant's motions for January 6, 1982. On December 21, 1981, Banco Nacional moved, by order to show cause, for expedited consideration of its motions to vacate the attachment and to dismiss the action.

On December 22, 1981, the district court heard argument on defendant's motion to expedite. On the same day the district court filed its opinion and order which are the subject of the instant appeal. The district court held that defendant's waiver of prejudgment attachment was not "explicit" within the meaning of § 1610(d)(1) and vacated the attachment.[2] From the

---

1. 28 U.S.C. § 1610(d) provides:

   "(d) The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if—

   (1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and

   (2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction."

   Since plaintiffs are not asserting quasi in rem jurisdiction as a result of the attachment, but rely on in personam jurisdiction (which remains to be litigated), no issue arises with respect to § 1610(d)(2).

2. The district court deferred ruling on defendant's motion to dismiss for lack of in personam jurisdiction.

order vacating the attachment, plaintiffs appealed. We reverse and vacate the order.

## II.

It is undisputed that Banco Nacional is an instrumentality of the government of Costa Rica and therefore is a "foreign state" within the meaning of the Act. 28 U.S.C. § 1603. Banco Nacional's assets in New York in general are immune from attachment. 28 U.S.C. § 1609. Section 1610(d), however, provides by way of exception that such property will not be immune from prejudgment attachment where there is an "explicit" waiver. The question presented, therefore, is whether, under the circumstances of this case, there was an "explicit" waiver within the meaning of § 1610(d)(1).

In obtaining the $40 million loan, Banco Nacional entered into a letter agreement with plaintiffs, paragraph 11(d) of which provides:

> "The Borrower can sue and be sued in its own name and does not have any right of immunity from suit with respect to the Borrower's obligations under this Letter or the Notes."

In compliance with the terms of this letter agreement, Banco Nacional made four promissory notes in favor of each plaintiff lending bank, each note providing:

> "The Borrower hereby irrevocably and unconditionally waives any right or immunity from legal proceedings including suit judgment and execution on grounds of sovereignty which it or its property may now or hereafter enjoy." .

The sole question on this appeal is whether the foregoing provisions in the notes constitute an "explicit" waiver. We hold that they do.

## III.

◼ The clear import of the district court's opinion and of defendant's argument on appeal is that the waiver, to be effective under the Act, must recite the words "prejudgment attachment" *in haec verba* or otherwise must contain an express reference to this form of legal proceeding. We disagree. Section 1610(d)(1) does not require recitation of the words "prejudgment attachment" as an operative formula. Although the legislative history is silent on this point, the purpose of § 1610(d)(1) is to preclude inadvertent, implied, or constructive waiver in cases where the intent of the foreign state is equivocal or ambiguous. Under this interpretation of the statute, Banco Nacional's waiver clearly was explicit.

◼ The word "explicit" has been defined as follows:

> "Not obscure or ambiguous, having no disguised meaning or reservation. Clear in understanding."

Black's Law Dictionary 519 (5th ed. 1979). The provision in the promissory notes quoted above evinces a clear and unambiguous intent to waive all claims of immunity in all legal proceedings. "Suit judgment" and "execution" are referred to only by way of examples of legal proceedings. This enumeration clearly is not intended to be exhaustive. If anything, it suggests that prejudgment attachment is a form of "legal proceedings". The waiver is "explicit" in the sense that it is clear and unambiguous. Banco Nacional certainly intended to reserve no rights of immunity in any legal proceedings.

Defendant argues that the result reached by the district court is required by the contrast between § 1610(d)(1) and § 1610(a)(1) of the Act.[3] The latter re-

---

3. 28 U.S.C. § 1610(a) provides in relevant part:

"(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver...."

quires a court to give effect to both explicit and implied waivers of immunity from attachment in aid of execution of a judgment. Interpreting "explicit", however, in its natural sense of "clear", as we have, does not eviscerate the contrast between "explicit" and "implicit". Section 1610(a)(1) makes the waiver provision of the promissory notes appear no less clear. If anything, the contrast helps plaintiffs, for the waiver here certainly is not "implied". What Congress meant to preclude by § 1610(d)(1) was *unintended* waiver.[4] It would be absurd for Banco Nacional to argue that it did not intend to waive its right to immunity from prejudgment attachment.

The district court and defendant on appeal rely on several district court cases interpreting the following provision of the Treaty of Amity between the United States and Iran:

"No enterprise of either [the United States or Iran] . . . shall, if it engages in commercial, industrial, shipping or other business activities within the territories of the other High Contracting Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein."

Treaty of Amity, Aug. 15, 1955, United States-Iran, Art. XI ¶ 4, 8 U.S.T. 899, 909, T.I.A.S. No. 3853. The weight of authority is that this provision—and in particular the phrase "other liability"—is not an explicit waiver of immunity from prejudgment attachment. *Security Pacific National Bank v. Iran*, 513 F.Supp. 864, 879–80 (C.D.Cal. 1981); *New England Merchants National Bank v. Iran Power Generation & Transmission Co.*, 502 F.Supp. 120, 126–27 (S.D. N.Y.1980), *remanded*, 646 F.2d 779 (2 Cir. 1981); *E-Systems, Inc v. Islamic Republic of Iran*, 491 F.Supp. 1294, 1301–02 (N.D. Tex.1980); *Reading & Bates Corp. v. Na-*

*tional Iranian Oil Co.*, 478 F.Supp. 724, 728 (S.D.N.Y.1979); *Behring International, Inc. v. Imperial Iranian Air Force*, 475 F.Supp. 383, 392–93 (D.N.J.1979). *Contra, Reading & Bates Drilling Co. v. National Iranian Oil Co.*, No. 79 Civ. 6034 (S.D.N.Y. Nov. 29, 1979) (bench ruling); *Electronic Data Systems Corp. v. Social Security Organization of the Government of Iran*, No. 79 Civ. 1711 (S.D.N.Y. May 23, 1979) (bench ruling), *remanded*, 610 F.2d 94 (2 Cir. 1979). It is far from certain that prejudgment attachment is a "liability". *See Reading & Bates Corp.*, *supra*, 478 F.Supp. at 729. To the extent that it may be said that these cases might suggest that a waiver by a foreign state of all immunities is not an explicit waiver of immunity from prejudgment attachment, we would disagree and note that they are not controlling on this Court.

As in all contract cases, we must ascertain the intent of the parties. Section 1610(d)(1) affects our interpretation of the operative language here only to the extent that that language might not be clear; § 1610(d)(1) does not require verbatim recitation or express enumeration of immunity from prejudgment attachment as one of the waived immunities.

In the instant case, in which the foreign state has waived all immunities in writing, there can be no doubt as to intent. We hold that the waiver is explicit within the meaning of § 1610(d)(1).

We order that the mandate issue forthwith.

Reversed and vacated.

---

4. By contrast, the legislative history supplies examples of conduct that could constitute an unintended waiver "by implication" under § 1610(a)(1). *See* explanation of § 1605(a)(1), H.Rep.No.94–1487, 94th Cong., 2d Sess. 18, re-*printed in* [1976] U.S.Code Cong. & Ad.News 6604, 6617, expressly discussed as applicable to § 1610(a)(1), *id.* at 28, [1976] U.S.Code Cong. & Ad.News at 6627.